Calvin Ray BRATTON, Appellant

v.

The STATE of Texas, Appellee.

Nos. 05–03–01773–CR, 05–03–01774–CR, 05–03–01775–CR.

Court of Appeals of Texas, Dallas.

Feb. 28, 2005.

Gary A. Udashen, Sorrels & Udashen, Dallas, for Appellant.

William T. (Bill) Hill, Jr., and Laura Anne Coats, Asst. Dist. Atty., Dallas, for State.

Before Justices WRIGHT, RICHTER, and MAZZANT.

## OPINION

*Opinion by Justice RICHTER.*

Calvin Ray Bratton appeals his convictions for the aggravated robberies of Raymond Velasco (appellate cause number 05–03–01773–CR), Anthony Sirmans (appellate cause number 05–03–01774–CR), and Michael Cox (appellate cause number 05–03–01775–CR). In three issues, Bratton argues the trial court erred in (a) admitting the written statements of two nontestifying accomplices in violation of Bratton's right to confrontation and (b) submitting a jury instruction at the guilt-innocence phase containing language from the disapproved *Geesa*[1] reasonable doubt definition. We affirm.

### Background

Velasco, Sirmans, and Cox were walking toward their cars after leaving a bar in the lower Greenville area in the early morning hours of December 28, 2002 when they were approached by "four or five" hooded African–Americans. At least one of these hooded individuals robbed Velasco at gunpoint, another robbed Sirmans, and a third robbed Cox, also at gunpoint. The robbers then fled, and Velasco called 911. The police arrived and within minutes drove Velasco, Sirmans,

---

**1.** *See Geesa v. State,* 820 S.W.2d 154, 162 (Tex.Crim.App.1991), *overruled in part by* *Paulson v. State,* 28 S.W.3d 570, 573 (Tex. Crim.App.2000).

and Cox to a location where five African–Americans were being held. These individuals had been seen speeding away in their car from the area where the robberies occurred and throwing a wallet and cards out the window before being stopped. Although one of the cards belonged to Velasco, none of the victims were able to identify these individuals as the robbers. However, three of these individuals, Luther Hargraves, Jason Ward, and Derrin Curl, subsequently gave voluntary written statements admitting to the robberies and implicating Bratton and Hargraves's mother Shanda.

At trial, Velasco and Cox[2] testified that because of the robbers' hoods and the lighting where the robberies occurred, they were not able to identify any of the robbers. Van Johnson, a passerby who witnessed the robberies, also testified and acknowledged that he could not identify any of the robbers either.

Dallas police officer Genaro Hernandez testified he was working undercover in the area where the robberies occurred when he noticed a "suspicious" car parked on the wrong side of the street. The car was running but the lights were turned off, and it appeared to Hernandez that the driver was waiting for someone to return. Because of the suspicious nature of the car, Hernandez decided to watch the car from a distance. Moments later, he saw the car, with several occupants, drive away at a high rate of speed. Hernandez radioed for back-up and began following the car. According to Hernandez, the driver ran several stop signs but stopped once uniformed officers in a marked squad car pulled the car over. Four men and a woman were in the car—Hargraves, Brat-ton, Curl, Ward, and Shanda. All cooperated but Bratton, who started running. Bratton was eventually caught, however, and arrested with the others. At the time, Bratton was not wearing a hooded jacket, although an officer did observe him "trying to get out of his clothes."

Russell Taylor, the officer who pulled the car over, testified that he observed a wallet and cards being thrown out the window as he pulled up to the suspects' car. According to Taylor, Shanda was driving, Bratton was in the front passenger seat, Curl was behind Shanda, Hargraves was in the middle back seat, and Ward was behind Bratton. Based on the seating arrangement, Taylor believed it was Ward who had thrown the items out the window. Taylor also testified that a search of the car revealed two stocking caps, three sets of cut pantyhose, and two firearms—one under the front passenger seat and the other under the driver's seat.

Dallas police officer Rudy Contreras testified he obtained the statements from Hargraves, Curl, and Ward. Over objection, Curl's and Ward's statements were admitted into evidence and read to the jury.[3] According to their statements, when they got out of the car to commit the robberies, Bratton got out with them. Although they suggested Bratton was with them when the robberies occurred, neither one mentioned how Bratton participated. Specifically, Curl stated,

I was at Shanda's house sleeping. When I woke up, [Hargraves], [Bratton], and me were smoking weed. Then we went to get [Ward]. We stopped to get some gas. We went by the club, then we hit the lick. [Ward] had his gun. I had the .38. We saw the two white

2. Sirmans did not testify at trial. According to the record, he had an out-of-town "business meeting he could not miss."

3. Hargraves's statement was not offered into evidence and is not a part of the record on appeal.

guys. Then we got out of the car. We all four jumped out of the car. We did the lick. I got the wallet and the cell phone. We went back to the car and burned off. I'm sorry for doing this. We shouldn't have been there in the first place.

Ward's statement provided a little more detail:

My girl told me that someone from Shanda's house called looking for me, so I called them back. I asked to speak to Shanda. She said that they had been talking about getting some money. [Bratton], [Hargraves], and Curl were at Shanda's house. They had been talking about hitting a lick. First we went to get some gas. Then we rode down Greenville. Shanda drove. [Bratton] was in the front seat. I was behind [Bratton]. [Hargraves] was in the middle of the back seat. Curl was behind Shanda's seat. [Bratton], [Hargraves], Curl and me got out of the car. We walked up to some white guys. Curl said, 'Give me what you got.' I saw Curl with a gun. I had the other gun in my pocket. We ran back to the car. I'm sorry for what happened. We weren't out to hurt nobody. The pistols weren't drawn. There were four of us and two of them. We were trying to bluff them. We were trying to scare them. We were just trying to get gas money, soap and tissue. We have only one bar of soap at the house, one roll of tissue. We're just struggling man.

Contreras testified he also interviewed Bratton. Although Bratton admitted to him he had gotten out of the car with Hargraves, Curl, and Ward, Bratton denied any involvement or knowledge of the robberies. According to Contreras, Bratton explained he had gotten out so that he could "relieve himself" and did not know what the other three did.

The State's final witness, Hargraves, testified he had pleaded guilty to the robberies and received five years deferred adjudication. As part of the plea, he agreed to testify as a State witness in Bratton's trial. Hargraves testified that two days before the robberies, he had heard Bratton saying he needed some money and wanted to "hit a lick." Then, on the night of the robberies, he heard Shanda and Bratton talk about "hitting a lick" again. Although he admitted he was present when the robberies were committed, Hargraves denied playing an active role and testified that Bratton was "just ... standing like over on the side" when Curl and Ward pulled out their guns. Hargraves also testified that Bratton was not wearing a hooded jacket that night but did have on a "beanie cap." On cross-examination, Hargraves stated that everyone in the car that night, including Bratton and Shanda, were involved in the robberies. Hargraves also stated he believed his probation might be revoked if he did not testify that Bratton was involved in the robberies.

Bratton did not testify and did not call any witnesses. He was prosecuted as a party to the aggravated robberies and found guilty as charged in the indictments.

### Admissibility of Nontestifying Accomplices' Statements Under Confrontation Clause

In his first two issues, Bratton asserts the court's admission, over his objection, of Curl's and Ward's statements violated his right of confrontation under the Sixth Amendment of the United States Constitution. *See* U.S. CONST. amend. VI. Relying primarily on *Crawford v. Washington,*[4] 541

---

4. *Crawford* was decided while the instant appeals were pending.

U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), Bratton maintains that the statements were testimonial in nature and because neither Curl nor Ward were unavailable to testify and Bratton did not have a prior opportunity to cross-examine them, their statements were inadmissible. Bratton further maintains he was harmed by the admission of the statements. In response, the State argues that *Crawford* is inapplicable and, even if applicable, any error in the admission of the statements was harmless.

■■■■ The Confrontation Clause of the Sixth Amendment of the United States Constitution, applicable to the States by virtue of the Fourteenth Amendment, guarantees that in all criminal prosecutions, an accused shall have the right "to be confronted with the witnesses against him." U.S. CONST. amends. VI, XIV; *Shelby v. State,* 819 S.W.2d 544, 546 (1991). The primary interest secured by the Confrontation Clause is the right of cross-examination. *Shelby,* 819 S.W.2d at 546. This right is fundamental and applies not only to in-court testimony but also to out-of-court "testimonial" statements introduced at trial. *Id.; Crawford,* 124 S.Ct. at 1364–65. Although a comprehensive definition of "testimonial" statements has not been articulated, it applies at a minimum to police interrogations and prior testimony at a preliminary hearing, before a grand jury, or at a former trial. *Crawford,* 124 S.Ct. at 1374. Under the Confrontation Clause, testimonial evidence may be introduced at trial only when the declarant is unavailable and the accused has had a prior opportunity for cross-examination. *Id.*

■■■■ In determining whether a court's admission of a nontestifying accomplice's statement violates the Confrontation Clause, we conduct an independent review of the record. *Lilly v. Virginia,* 527 U.S.

116, 136–37, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999); *Brooks v. State,* 132 S.W.3d 702, 705 (Tex.App.-Dallas 2004, pet. ref'd). Because the admission of a nontestifying accomplice's statement in violation of the Confrontation Clause is constitutional error, we will affirm the conviction only if we determine beyond a reasonable doubt that the error did not contribute to the conviction. *See* TEX.R.APP. P. 44.2(a); *Brooks,* 132 S.W.3d at 707–08. In making this determination, we do not focus on the propriety of the trial's outcome but on calculating, as nearly as possible, the probable impact of the error on the jury in light of the other evidence. *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App.2000). In other words, the question is not whether the legally admitted evidence is sufficient to support the conviction. *McCarthy v. State,* 65 S.W.3d 47, 55 (Tex.Crim.App. 2001) (quoting *Satterwhite v. Texas,* 486 U.S. 249, 258–59, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)). Rather, the question is whether the complained-of statement contributed to the jury's verdict, regardless of the sufficiency of the evidence, independent of the statement, to sustain the conviction. *Id.* Asked in another way, the question is whether a reasonable probability exists that the error moved the jury from a state of nonpersuasion to one of persuasion as to the issue in question. *Wesbrook,* 29 S.W.3d at 119.

■■■ In this case, the State does not dispute Curl's and Ward's statements were testimonial in nature, as they were the result of police interrogation. The State maintains, however, that *Crawford* does not apply because Curl and Ward were "available, present, and could have been confronted" by Bratton. Indeed, the record reflects both Curl and Ward were present at trial. The record further reflects that both had pleaded guilty to the robberies. As such, they were not entitled

to assert any Fifth Amendment privilege against self-incrimination and could have been called to testify. *See Franco v. State,* 491 S.W.2d 890, 890–91 (Tex.Crim.App. 1973). Although the record does not reflect why neither the State nor Bratton called Curl and Ward to testify, the State argues that Bratton chose not to call them as a matter of trial strategy. And, because he chose not to call them as a matter of trial strategy, he cannot complain he was denied his right to confront them. However, the State provides no authority for this contention, and we find nothing in *Crawford* or elsewhere suggesting that a defendant waives his right to confront a witness whose testimonial statement was admitted into evidence by failing to call him as a witness at trial. *See* Tex.R.App. P. 38.1(h); *see also State v. Cox,* 876 So.2d 932 (La.Ct.App.2004) (specifically rejecting this argument and noting that if State needed to have witness's testimonial statement admitted into evidence, State could have called witness to testify). In fact, as the party seeking to admit Curl's and Ward's statements, it was the State's burden to show their statements were admissible, that is, that Curl and Ward were *unavailable* and that Bratton had been afforded a prior opportunity to cross-examine them. *See Crawford,* 124 S.Ct. at 1374; *Snowden v. State,* 156 Md.App. 139, 846 A.2d 36, 47 n. 31 (2004) (State did not satisfy *Crawford* foundational requirements where it failed to show declarant of testimonial hearsay unavailable to testify), *aff'd,* 385 Md. 64, 867 A.2d 314 (2005); *see also Davis v. State,* 872 S.W.2d 743, 749 (Tex.Crim.App.1994) (op. on reh'g) (proponent of statement against penal interest bears burden of showing its admissibility); *Meador v. State,* 812 S.W.2d 330, 333 (Tex. Crim.App.1991) (same—co-conspirator's statement). By the State's own admission though, Curl and Ward were available to testify, and nothing in the record suggests,

nor does the State contend, that Bratton was afforded a prior opportunity to cross-examine them. As such, the statements were inadmissible, and the trial court erred in not excluding them. *See Crawford,* 124 S.Ct. at 1364–65.

■ Having concluded the trial court erred in not excluding Curl's and Ward's statements, we now turn to whether Bratton was harmed. As stated, Bratton was prosecuted as a party to the aggravated robberies, which required the State to prove that, acting with intent to promote or assist the commission of the offenses, Bratton solicited, encouraged, directed, aided, or attempted to aid Hargraves, Curl, or Ward. *See* Tex. Pen.Code Ann. § 7.02(a)(2) (Vernon 2003). In arguing that any error in the admission of Curl's and Ward's statements was harmless, the State notes that Hargraves testified Bratton had stated he wanted "to hit a lick," got out of the car with Curl and Ward, who had guns, and walked with them to where the robberies were committed. Additionally, the record shows Velasco, Sirmans, and Cox were approached by "four or five" men, at least three of whom robbed them. The State argues this shows the men were working together. The State also relies on the officers' testimony concerning the flight from the scene of the robbery, the resulting chase of Bratton after the car was stopped, and Bratton's attempt to remove his clothing. The State maintains this evidence overwhelmingly supports Bratton's involvement.

Of course, our question is not whether the legally admitted evidence is sufficient to support the conviction. *McCarthy,* 65 S.W.3d at 55 (quoting *Satterwhite,* 486 U.S. at 258–59, 108 S.Ct. 1792). Rather, we must determine whether the admission of Curl's and Ward's statements moved the jury from a state of nonpersuasion to one of persuasion. *Id.* Aside from the

inadmissible statements, the State's evidence consisted of the testimony of the victims, the officers, and Hargraves. Of this evidence, Hargraves's testimony provided the State's most direct proof of Bratton's involvement. His testimony was subject to scrutiny and challenged in front of the jury. Although Curl's and Ward's statements constituted unchallenged substantive evidence implicating Bratton in the robberies, their statements provided little, if any, additional evidence concerning Bratton's actual involvement. Their statements, like Hargraves's testimony, revealed an intent on Bratton's part to commit a robbery and also his presence at the time of the robberies. However, the statements did not disclose any specific acts Bratton might have committed during the robberies, and thus, did not add to the State's proof. Although the statements could have added credibility to Hargraves's testimony, other evidence separately corroborated Hargraves's testimony. For example, the victims' testimony that they were approached and robbed by "four or five" men, at least two of whom had guns, corroborated Hargraves's testimony that Bratton was present during and involved in the robberies. *See Brooks v. State,* 580 S.W.2d 825, 831 (Tex.Crim.App. [Panel Op.] 1979) (to convict someone as a party to offense, evidence must show parties were acting together at time of offense). Additionally, the officers' testimony that (a) Bratton was in the car that was seen speeding away from the area where the robberies occurred, from which a wallet and cards were being discarded, and in which two stocking caps, three sets of cut pantyhose, and two firearms were found, along with (b) Bratton's uncooperativeness, fleeing from the officers, and trying to remove his clothes corroborated Hargraves's testimony that Bratton knew of the robberies and was a "part of them." *See Valdez v. State,* 623 S.W.2d 317, 321

(Tex.Crim.App.1979) (op. on reh'g) (presence at scene of crime and flight from scene of crime are circumstances tending to show guilt). Given the record before us, we conclude beyond a reasonable doubt that the admission of Curl's and Ward's statements did not contribute to Bratton's convictions. *Compare Mendez v. State,* 56 S.W.3d 880, 893 (Tex.App.-Austin 2001, pet. ref'd) (admission of nontestifying accomplice's statement harmful where statement only evidence showing appellant planned murders, provided weapons, entered victim's home, and fired gun) *and Brooks,* 132 S.W.3d at 708–11 (admission of nontestifying accomplice's statement harmful where statement only direct proof showing appellant's culpable mental state and active participation as party prior to and during offense) *with Wall v. State,* 143 S.W.3d 846, 851–52 (Tex.App.-Corpus Christi 2004, no pet.) (admission of nontestifying witness's statement harmless where statement cumulative of other evidence). We resolve Bratton's first and second issues against him.

### "Reasonable Doubt" Definition

In his third issue, Bratton complains the trial court erred by improperly instructing the jury during the guilt-innocence phase of trial. Specifically, Bratton complains the trial court erred in overruling his objection to the court's instruction that "[i]t is not required that the prosecution prove guilt beyond all possible doubt; it is required that the prosecution's proof excludes all 'reasonable doubt' concerning the defendant's guilt." Relying on *Phillips v. State,* 72 S.W.3d 719, 721 (Tex.App.-Waco 2002, no pet.), Bratton maintains this instruction violates the holding in *Paulson v. State,* 28 S.W.3d 570, 573 (Tex.Crim. App.2000), that "the better practice is to give no definition of reasonable doubt at all to the jury." However, as the State points

out, we specifically disagreed with *Phillips* in *O'Canas v. State,* 140 S.W.3d 695, 701–02 (Tex.App.-Dallas 2003, pet. ref'd), and concluded this instruction did not define reasonable doubt but "simply state[d] the legally correct proposition that the prosecution's burden is to establish proof beyond a *reasonable* doubt and not *all possible* doubt." Having already rejected the precise argument made here by Bratton, we resolve Bratton's third issue against him.

We affirm the trial court's judgments.