IN THE

TENTH COURT OF
APPEALS




 
 
 
 
 
 
 


 



No. 10-03-00099-CR

 

DARRELL MCCLENTON,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 82nd District Court

Robertson County, Texas

Trial Court # 02-09-17,350-CR

 



O P I N I O N



 








Darrell McClenton was charged by indictment with
the first-degree felony offense of aggravated robbery with the exhibition of a
deadly weapon (handgun).  A jury found
McClenton guilty and assessed his punishment at 24 years’ imprisonment and a
$10,000 fine.  McClenton appeals, raising
five issues.

          We
will overrule all five issues and affirm the trial court’s judgment.

Provision
of Recorded Oral Statements

In his first issue, McClenton complains that the
State did not “provide” his attorney with a copy of his recorded oral
statements at least 20 days before trial, as required by article 38.22 of the
Texas Code of Criminal Procedure, and that the trial court thus erred in admitting
one of the statements (in which McClenton admitted committing the offense) into
evidence.

Recorded oral statements of an accused, made as
a result of custodial interrogation, are not admissible unless: “not later than
the 20th day before the date of the proceeding, the attorney representing the
defendant is provided with a true, complete, and accurate copy of all
recordings of the defendant made under this article.”  Tex.
Code Crim. Proc. Ann. art. 38.22, § 3(a)(1), (a)(5) (Vernon Supp. 2004-05). 
The State is not required to “give” defense counsel a copy of any
recorded statements; rather, it is required to “provide access” to the
statements.  Lane v. State, 933 S.W.2d 504, 515-17 (Tex. Crim. App. 1996).  “So long as defense counsel is informed of
the existence of the recording and is permitted reasonable access to a copy,
the purpose of § 3(a)(5) has been met.”  Id. at 516.

In this case, the pretrial and trial occurred on
February
 18, 2003, and at the
pretrial, the trial court heard McClenton’s motion to suppress his two recorded
oral statements (audiotapes) on the ground that the State allegedly had not
provided his attorney with copies of the two statements until February
 10, 2003, which was
within 20 days of trial.  McClenton’s
attorney, who had been appointed on August 27, 2002, told the trial court that
he had never been told that copies of the tapes were available for him; that for
“two or three months” he had the investigating officer’s report that refers to
the recorded statements; that about two weeks before he had “re-read” the
report and realized that there were two tapes; on February 10 he visited the district
attorney’s office and obtained copies of the tapes; and that prior to then the
tapes had not been “provided” to him.

The district attorney informed the trial court
that copies of the tapes (of McClenton and two others charged with the robbery)
were made on January 6, 2003; that the copies had been in the district
attorney’s file and available for defense counsel since then; that his office
had an “open-file policy”; that the file had been open since the case was
filed; that he furnished defense counsel with the written offense report; and
that as far as he knew, McClenton’s attorney had knowledge of the tapes and
their availability.

Several courts have addressed similar scenarios.[1]  For example, in Tinker v. State, the defendant argued that his recorded statements
were improperly admitted because the State failed to provide defense counsel
with copies at least 20 days before trial. 
Tinker v. State, 148 S.W.3d
666 (Tex. App.—Houston [14th Dist.] 2004, no pet. h.).  The defense attorney admitted that he was
aware of his client’s taped statements and that he had free access to his
client’s file at the district attorney’s office, but the tapes were not in the
file.  The prosecutor noted that the
tapes are not kept in individual files but are kept in a separate filing
cabinet and that defense counsel could have obtained them from that cabinet.  Following Lane,
the court of appeals found:  “Nothing in
the record indicates defense counsel specifically requested or was denied
access to the tape recorded statements at any time prior to trial.  Where, as here, defense counsel is aware of
the existence of taped statements, the State is only required to “permit
reasonable access” to a copy.”  Id. at 673.

Likewise, we read McClenton’s trial attorney’s
statements to the trial court to be that he was aware of the recorded
statements two to three months before trial and that he knew he had access to
them.  We thus follow Lane and hold that the State “provided”
the tapes because McClenton’s trial attorney was aware of the recorded
statements and had access to them.  Lane, 933 S.W.2d at 516.  We overrule the first issue.

Victim-Impact
Testimony

          McClenton’s
second issue complains that the trial court erred in admitting “victim-impact”
testimony during the guilt-innocence phase of the trial.  Specifically, he complains of the following
State-elicited testimony of Diane Kempenski, the clerk of the convenience store
(the A-1 Drive In) allegedly robbed by McClenton and three others:

Q.      Now, were you placed in fear of imminent
bodily injury or death by these defendants who robbed the A-1 Drive In?

 

A.      Yes, sir.

 

Q.      Tell the jury how you felt while this
robbery was going.

 

A.      I though they were going to kill me.  I kept telling them, you know, “Please don’t
kill me, just take whatever you want.” 
When you’ve got a gun to your face, it’s hard.

 

Q.      Are you still working there at the A-1?

 

A.      Yes, I am.

 

Q.      How do you feel now working there after
August 18?  Is it any different from the
way you felt before August 18?

 

A.      Yes, sir, it is.

 

[DEFENSE
ATTORNEY]   Judge, I’m going to object to
relevance.

 

THE COURT:         Overruled.

 

Q.      Describe that feeling that you have now
that you did not have prior to your encounter with those four individuals who
robbed you?

 

[DEFENSE ATTORNEY]   Judge, I am going to again object to
relevance and would ask for a running objection.

 

THE COURT:         Running objection is noted, same is
overruled.

 

A.      Do I answer it?

 

Q.      Yes.

 

A.      Well, now I am more cautious who comes
in.  I watch more.  I stay more around the register.  I don’t go to my cooler hardly at all once
night comes.  I wait until - - I lock the
doors before I do anything, because I’m really afraid.  It’s a bad feeling when you see somebody walk
up while I’m doing something or turn around and somebody is there.  It just startles me, you know.  I think it’s somebody else trying to come in
and do the same thing.  It’s just not the
same.

 

Relying on Stavinoha
v. State, McClenton urges that this testimony was irrelevant and
inadmissible and that the trial court abused its discretion in overruling his
objections and admitting the testimony.[2]  See Stavinoha
v. State, 808 S.W.2d 76, 78 (Tex. Crim. App. 1991) (citing Miller-El v. State, 782 S.W.2d 892, 895
(Tex. Crim. App. 1990)).  The crime’s
after-effects on the victim is not relevant at the guilt-innocence phase.  Garrett
v. State, 815 S.W.2d 333, 337-38 (Tex. App.—Houston [1st Dist.] 1991, pet. ref’d)
(citing Miller-El).

We agree with McClenton (and with the State’s
concession)[3]
that Kempenski’s testimony about how she felt after the robbery was irrelevant
and that the trial court abused its discretion in overruling McClenton’s
relevance objections and admitting this testimony.

Having found error, we must conduct a harm
analysis under Rule 44.2(b) of the Texas Rules of Appellate Procedure, which
provides that a nonconstitutional error “that does not affect substantial
rights must be disregarded.”  Tex. R. App. P. 44.2(b); see Motilla v. State, 78 S.W.3d 352, 355
(Tex. Crim. App. 2002).  While we consider
the harm, if any, caused by the admission of the testimony, we will disregard
any error that does not affect a substantial right of the defendant.  Id.;
Haynes v. State, 85 S.W.3d 855, 859
n.4 (Tex. App.—Waco 2002, pet. ref'd). 
"A substantial right is affected when the error had a substantial
and injurious effect or influence in determining the jury's verdict."  King v.
State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557
(1946)).  We do not reverse if,
"after examining the record as [a] whole, [we have] fair assurance that
the error did not influence the jury, or had but a slight effect."  Johnson
v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); see also Schutz v. State,
63 S.W.3d 442, 444 (Tex. Crim. App. 2001). 
The reviewing court should consider everything in the record, including
all the evidence admitted, the arguments, and voir dire.  Motilla,
78 S.W.3d at 355-57.  The strength of the
evidence of guilt, especially if it is overwhelming, is a factor to be
considered.  Id. at 356-58; Haynes,
85 S.W.3d at 859 n.4.  However, if we
have "grave doubt" about whether the error did not affect the
outcome, then the error is treated as if it did affect the outcome.  Thomas
v. State, 137 S.W.3d 792, 796 (Tex. App.—Waco 2004, no pet.) (citing Fowler v. State, 958 S.W.2d 853, 865
(Tex. App.—Waco 1997), aff'd, 991
S.W.2d 258 (Tex. Crim. App. 1999)).

          After
examining the evidence as a whole, we conclude that the admission of the testimony
had no effect on the jury.  Johnson, 967 S.W.2d at 417; Castillo, 910 S.W.2d at 127-28; Garcia, 827 S.W.2d at 30.  The record includes McClenton’s recorded
statement in which he admitted to committing the robbery and holding the
gun.  This, along with the other
testimony linking McClenton to the crime, is more than enough evidence of guilt
to render the erroneous admission of the testimony harmless.  See Motilla,
78 S.W.3d at 357-58.  While the State did
mention during closing argument the fear that a person would have while being
robbed at gunpoint by four masked people, it was not a reference to the
victim’s irrelevant after-effects testimony, but was in response to the
defense’s closing argument in which the victim’s credibility was attacked over her
description of the robber who “scared the hell out of her with a gun.”

We cannot say that we have "grave
doubt" about whether the error affected the outcome.  Thomas, 137 S.W.3d at
796.  Given the strength of the evidence
of guilt, we find the erroneous admission of the testimony harmless.  Motilla,
78 S.W.3d at 357-58; cf. Garrett, 815 S.W.2d at 338.  Accordingly, we overrule McClenton’s second issue.

Confrontation-Clause
Violation

          McClenton
asserts in a third issue that the trial court erred in admitting hearsay
testimony by Officer Jerry Stover relating to statements made to Stover by two
of McClenton’s codefendants and accomplices, Charlie Smith and Patrick
Johnson.  McClenton alleges that this hearsay
testimony violated his Confrontation-Clause rights under the Sixth Amendment.

The Sixth
Amendment to the United States Constitution provides that "[i]n all
criminal prosecutions, the accused shall enjoy the right to . . . be confronted
with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause’s central concern is
to ensure the reliability of the evidence against a criminal defendant by
subjecting it to rigorous testing in the context of an adversarial proceeding
before the trier of fact.  Lilly v.
Virginia, 527 U.S. 116, 123-24,
119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). 
The United States Supreme Court recently held that testimonial
statements of witnesses absent from trial are admissible over a Sixth Amendment
Confrontation Clause objection only where the declarant is unavailable and only
where the defendant has had a prior opportunity to cross-examine.  Crawford v. Washington, 541 U.S. 36, 59, 124 S.Ct.
1354, 1368-69, 158 L.Ed.2d. 177 (2004). 
The Sixth Amendment right of confrontation is a fundamental right and is
applicable to the states by virtue of the Fourteenth Amendment.  Shelby v. State, 819 S.W.2d 544, 546
(Tex. Crim. App. 1991) (citing Pointer v. Texas, 380 U.S. 400, 403, 85
S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)). 
We review de novo the trial court's ruling that the admission of
Stover’s testimony did not violate McClenton’s Confrontation-Clause
rights.  Lilly, 527 U.S. at 136-37, 119
S.Ct. at 1900.

Statements taken
by police officers in the course of interrogations are testimonial.  Crawford, 541 U.S. at 52, 124
S.Ct. at 1364.  Stover investigated the aggravated robbery of the
A-1 Drive In.  In addition to obtaining
two recorded statements from McClenton, he obtained recorded statements from
Smith and Johnson, both of whom implicated themselves and McClenton in the
robbery.  Under Crawford, the recorded
statements of Smith and Johnson made to police during custodial interrogation
constitute testimonial evidence.  Id.  The
State agrees that their statements are “testimonial” and that Crawford applies, but it argues that
McClenton “opened the door” by first asking Stover on cross-examination about
Smith’s statement:

Q.      You actually had an opportunity to talk to
Charlie Smith in the Brazos County Jail?

 

A.      Yes,
sir.

 

. . .

 

Q.      You
talked to him there in the Brazos County Jail about the circumstances
surrounding this case, is that correct?

 

A.      Yes,
sir.

 

Q.      And
that was your intent to do so?

 

A.      Yes,
sir.

 

Q.      And
in your conversations with Mr. Smith, did he indicate that someone other than
Darrell McClenton was wielding the pistol?

 

A.      Yes,
sir.

 

Q.      In
fact, he indicated that someone other than Darrell McClenton was actually the
first one into the store, correct?

 

A.      This
is Mr. Smith’s testimony?

 

Q.      Yes,
sir.

 

A.      Yes,
sir.

 

          On
redirect examination, the State asked Stover more questions about Smith’s statement, but it also began
asking questions about Johnson’s
statement, about which McClenton had not cross-examined Stover.  Over McClenton’s hearsay and Confrontation-Clause
objections and his assertion that he had not opened the door as to Johnson’s
statement, the trial court allowed Stover to testify that Johnson said in his
statement that McClenton held the gun in the robbery (which McClenton admitted
in his own statement), that Smith was the driver, and that they had gone to a
Bremond housing complex before the robbery (which McClenton denied in his
statement).

          Otherwise
inadmissible evidence may be admitted if the party against whom the evidence is
offered “opens the door,” but the party offering the evidence may not “stray
beyond the scope of the invitation.”  Schutz v. State, 957 S.W.2d 52, 71 (Tex.
Crim. App. 1997) (quoting Bush v. State,
773 S.W.2d 297, 301 (Tex. Crim. App. 1989)); see Clay v. State, 102 S.W.3d 794, 797 (Tex. App.—Texarkana 2003,
no pet.); Bell v. State, 867 S.W.2d
958, 962 (Tex. App.—Waco 1994, no pet.). 
It is not error to admit hearsay evidence in a criminal case over
objection when it goes to clarify other hearsay evidence elicited by the
opposition.  Bunton v. State, 136 S.W.3d 355, 367 (Tex. App.—Austin 2004, pet. ref’d).

          We
conclude that McClenton “opened the door” as to Smith’s statement and the trial
court properly allowed the State to question Stover about Smith’s statement,
but the court allowed the State to “stray beyond the scope of the invitation” by
eliciting testimony from Stover about Johnson’s
statement, over McClenton’s objections.  McClenton did
not have a prior opportunity to cross-examine Johnson about his statement, and it
is not disputed that Johnson, who was awaiting trial on the same charge, was
unavailable.  The admission of a
testimonial statement by an accomplice or codefendant as evidence of guilt of
the defendant on trial, absent opportunity by the defendant to cross-examine
the declarant, is "sufficient to make out a violation of the Sixth
Amendment."  Crawford, 541 U.S. at 68, 124
S.Ct. at 1374.  Thus, the trial court's
ruling on the admissibility of Stover’s testimony as to Johnson’s statement violated
McClenton’s Sixth Amendment Confrontation Clause rights.  Stover’s testimony about Johnson’s statement was
not admissible against McClenton, and the trial court erred in ruling
otherwise.  See id.

Because
a violation of the Sixth Amendment right of confrontation constitutes
constitutional error, we must reverse a trial court's judgment when
Confrontation-Clause error is present unless we can determine beyond a
reasonable doubt that the error did not contribute to the conviction.  See Tex.
R. App. P. 44.2(a) (requiring reversal of constitutional error unless
the appellate court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment); see Wall v. State, 143 S.W.3d 846, 851-52 (Tex. App.—Corpus Christi
2004, no pet. h.); Hale v. State, 139
S.W.3d 418, 422 (Tex. App.—Fort Worth 2004, no pet. h.).

In
determining harm from Confrontation-Clause error, we are to apply the factors
enunciated in Delaware v. Van Arsdall.  See Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct.
1431, 89 L.Ed.2d 674 (1986); Shelby, 819 S.W.2d at
547, 550-51.  The Van Arsdall harm
factors are the importance of the witness's testimony; whether the testimony
was cumulative; the presence or absence of evidence corroborating or
contradicting material points of the witness's testimony; the extent
cross-examination was permitted; and the overall strength of the State's
case.  Van Arsdall, 475 U.S. at 684, 106
S.Ct. at 1438.  If, applying these
factors, we cannot determine beyond a reasonable doubt that the Confrontation
Clause violation did not contribute to the appellant's conviction or
punishment, we must reverse the trial court's judgment.  Tex.
R. App. P. 44.2(a); Shelby, 819 S.W.2d at 546-47.  In
making this determination, we do not focus on the propriety of the trial's
outcome but on calculating, as nearly as possible, the probable impact of the
error on the jury in light of the other evidence.  Wesbrook v. State, 29 S.W.3d 103, 119 (Tex. Crim. App. 2000); Bratton
v. State, 156 S.W.3d 689, 693 (Tex. App.—Dallas 2005, no pet. h.).  In other words, the question is not whether
the legally admitted evidence is sufficient to support the conviction.  McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001)
(quoting Satterwhite v. Texas, 486
U.S. 249, 258-59, 108
S.Ct. 1792, 1798, 100 L.Ed.2d 284 (1988)).  Rather, the question is whether the
complained-of statement contributed to the jury's verdict, regardless of the
sufficiency of the evidence, independent of the statement, to sustain the
conviction.  Id.  Asked in
another way, the question is whether a reasonable probability exists that the
error moved the jury from a state of nonpersuasion to one of persuasion as to
the issue in question.  Wesbrook, 29 S.W.3d at 119; Bratton, 156 S.W.3d
at 693.

McClenton was convicted of
aggravated robbery.  He admitted to the
offense and to pointing the gun at Kempenski, the store clerk, in two separate
recorded statements with Stover.  A
witness who lived in Bremond near the store testified that earlier on the
evening of the robbery, McClenton (whom she identified in court) and three
other black males were in a car that drove up to her and asked her what time
the store closed.  Another local witness testified
and corroborated the testimony regarding descriptions of the car, the four men,
and that they asked what time the store closed. 
Their descriptions of the four men were consistent with Kempenski’s
descriptions.

In his first recorded statement, McClenton
identified three accomplices in the robbery and provided details of it,
including that he pointed a loaded gun at the store clerk.  When McClenton was later confronted by Stover
that one of the alleged accomplices could not have participated in the robbery
because he was in prison, McClenton gave a second recorded statement in which
he changed the names of two accomplices and asserted that the gun was not
loaded.

Stover’s testimony about Johnson’s statement was
largely cumulative of lawfully admitted evidence.  There was adequate evidence corroborating
McClenton’s and Smith’s recorded statements confessing to the robbery.  One of the witnesses previously knew and
identified McClenton as being in Bremond that evening with three other black
males and asking her what time the store closed, and a second witness gave
similar testimony.  On the day after the
robbery, after hearing about it, one of the witnesses went to the store and
told the owner about seeing and talking to McClenton the night before, and she
later told Stover the same information.  And
given McClenton’s two recorded statements confessing to the robbery, the State
overall had a strong case.  Disregarding
Stover’s testimony about Johnson’s statement, the lawfully admitted evidence
overwhelmingly proved McClenton’s guilt. 
See Wall, 143 S.W.3d at 852.  Given this case’s record, which we have
carefully reviewed, we conclude beyond a reasonable doubt that the admission of
Stover’s testimony about Johnson’s statement did not contribute to McClenton’s
conviction or punishment.  See Bratton, 156 S.W.3d at 694-95.  Accordingly, we hold that the trial court’s
error was not harmful and thus overrule McClenton’s third issue.

Impermissibly
Suggestive Photo Line-Up

          In
his fourth issue, McClenton says the trial court erred in the punishment phase
by admitting an allegedly tainted photo line-up conducted in connection with an
extraneous offense (aggravated robbery) allegedly committed by McClenton.

An in-court
identification is inadmissible if tainted by an unduly suggestive pretrial
identification.  See Loserth v. State,
963 S.W.2d 770, 771 (Tex. Crim. App. 1998). 
In determining whether the trial court erred in admitting an in-court
identification, we employ a two-step analysis, inquiring:  (1) if the pretrial procedure was
impermissibly suggestive; and (2) if so, whether the impermissibly suggestive
pretrial procedure gave rise to a very substantial likelihood of irreparable
misidentification at trial.  See
Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999); Delk v.
State, 855 S.W.2d 700, 706 (Tex. Crim. App. 1993).  It is the risk of in-court misidentification
that taints the identification.  See
Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim. App. 1988).  The defendant has the burden to show by clear
and convincing evidence that the in-court identification is unreliable.  See Delk, 855 S.W.2d at 706.  The admissibility of an identification is a
mixed question of law and fact that we review de novo.  See Loserth, 963 S.W.2d at 773.

          In the first step, we evaluate the
pretrial photo line-up itself to determine whether it was impermissibly or
unduly suggestive.  “A lineup is
considered unduly suggestive if other participants are greatly dissimilar in
appearance from the suspect.”  Withers
v. State, 902 S.W.2d 122, 125 (Tex. App.—Houston [1st Dist.] 1995, pet.
ref'd) (citing United States v. Wade, 388 U.S. 218, 232-233, 87 S.Ct.
1926, 1935, 18 L.Ed.2d 1149 (1967)).  A
suspect may be greatly dissimilar in appearance from the other participants
because of his distinctly different appearance, race, hair color, height, or
age.  See id. (citing Foster v.
California, 394 U.S. 440, 442-43, 89
S.Ct. 1127, 1128, 22 L.Ed.2d 402 (1969)). 
But minor discrepancies between line-up participants do not render a
line-up impermissibly suggestive.  See
id. (citing Partin v. State, 635 S.W.2d 923, 926 (Tex. App.—Fort Worth
1982, pet. ref'd)).  The line-up
participants need not be identical to satisfy due process requirements.  See Buxton v. State, 699 S.W.2d 212,
216 (Tex. Crim. App. 1985).

          McClenton asserts that his photograph
in the photo line-up was overly different in characteristics from the other
five photographs because the height line of two photographs was not “even
close” to the others and the other individual closest in weight to McClenton
was 18 pounds heavier than him.

          The
extraneous-offense aggravated robbery was investigated by Sergeant Vince Angele
of the Hearne Police Department, who generated photo line-ups from descriptions
that he obtained from the three complainants (one who was struck on the head
with a gun butt and one who was shot in the buttocks).  He prepared the photo line-ups using a
computer program that generates random photographs based on parameters defined
by the user.

We have reviewed the photo line-up that
McClenton complains of, and we find that none of the other photographed participants
are dissimilar in appearance from McClenton. 
The six color photographs depict six black males of generally the same
age, weight, height, and appearance.  The
height difference between the tallest and shortest is only four inches, and the
height differences are not even readily apparent because of various, slight
differences in distances between the camera and the subjects.  And because all the photographs depict the
subjects from the top of the shoulders and up, the various weight differences
are not noticeable.  We conclude that the
photo line-up is not impermissibly suggestive.

          McClenton
also claims that the trial court erred by letting Sergeant Angele and the three
alleged victims testify about their prior photo line-up identification of McClenton,
by admitting the photo line-ups that all three used, and by then allowing all
three to identify McClenton in the courtroom. 
McClenton asserts that this amounted to “impermissible bolstering.”  But because McClenton did not object on this
ground in the trial court and cites no authority in his brief, this complaint has
not been preserved and also has not been adequately briefed, presenting nothing
for review.  Tex. R. App. P. 33.1(a), 38.1(h); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000); Walder v.
State, 85 S.W.3d 824 (Tex. App.—Waco 2002, order).  We overrule McClenton’s fourth issue.

Punishment
Charge Error

          McClenton’s
final issue points to Huizar v. State to
show that the trial court erred in the punishment-phase charge by not including
a reasonable-doubt instruction on the extraneous-offense evidence admitted
during the punishment phase.  See Huizar v. State, 12 S.W.3d 479, 484
(Tex. Crim. App. 2000).  The State concedes error but notes that
McClenton’s trial counsel did not object to this charge error, which his
appellate counsel concedes.

          An
unpreserved complaint about a charge error in a criminal case is reviewed for
“egregious harm.”  Huizar, 12 S.W.3d at 484-85; Almanza
v. State, 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985).  Errors that result in egregious harm are
those that affect “the very basis of the case,” deprive the defendant of a
“valuable right,” or “vitally affect a defensive theory.”  Hutch
v. State, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) (citing Almanza, 686 S.W.2d at 172). 
In deciding whether egregious harm exists, we look at (1) the charge
itself, (2) the state of the evidence, including contested issues, (3) the
arguments of counsel, and (4) any other relevant information revealed by the
record of the trial as a whole.  Id.  In
asserting egregious harm, McClenton focuses on the unadjudicated aggravated
robbery that we addressed in McClenton’s fourth issue.

McClenton’s trial began on February
 18, 2004, and the jury
found him guilty that day.  The
guilt-innocence charge did contain a reasonable-doubt instruction for
extraneous offenses.  The punishment
phase began immediately but was not completed until the next day.  The State stipulated that McClenton was
eligible for community supervision.  With
a punishment range of 5 to 99 years for aggravated robbery, he received a
24-year sentence.

In his closing, McClenton’s trial attorney
argued to the jury that for them to consider the unadjudicated aggravated
robbery, they had to believe that it was McClenton who committed that offense
“beyond a reasonable doubt,” and he then mentioned twice more “beyond a
reasonable doubt.”

In both phases of the trial there was no mention
of any burden of proof other than “beyond a reasonable doubt.”  McClenton does not argue on appeal that the
evidence was insufficient to prove beyond a reasonable doubt that he committed
the unadjudicated aggravated robbery, for which he attacked the credibility of
the three complainants because of minor discrepancies, their prior drug use,
and because they changed their story because the alleged robbery occurred
during a drug buy that they did not initially reveal to law enforcement.

Having viewed the entire record, we do not find
that “the very basis of the case” was affected or that McClenton was deprived
of a “valuable right” as a result of the omitted reasonable-doubt instruction
in the trial court’s punishment charge. 
McClenton’s fifth issue is overruled.

Conclusion

          Having
overruled all of McClenton’s issues, we affirm the trial court’s judgment.

 

BILL VANCE

Justice

 

Before Chief
Justice Gray,

Justice Vance,
and

Justice Reyna

Affirmed

Opinion
delivered and filed April 20, 2005

Publish

[CRPM]











    [1]       See
also Atnip v. State, 1998 WL 393970 (Tex. App.—Austin 1998, no pet.) (not
designated for publication) (holding that where defense attorney knew tape
existed and State asserted that tape was available and defense could have obtained
it any time, tape was made available and State did not have to deliver it); Riley v. State, 1997 WL 466555 (Tex.
App.—Houston [1st Dist.] 1997, no pet.) (not designated for publication)
(holding that where defense counsel had transcript and incomplete copy of
recorded statement and thus was on notice of existence and content of statement
several months before trial, defendant had been “provided” with statement).





    [2]       We review a trial court's decision to
admit evidence for an abuse of discretion. 
Chamberlain v. State, 998
S.W.2d 230, 237 (Tex. Crim. App. 1999); Gipson
v. State, 82 S.W.3d 715, 721 (Tex. App.—Waco 2002, no pet.).

 





    [3]       In its brief, the State “concedes that
this question did elicit testimony from the victim regarding the after-effects
of Appellant’s crime” and that “victim impact testimony is, as a general rule
and in and of itself, irrelevant to the issue of Appellant’s guilt and is more
commonly viewed as a proper consideration during the punishment phase of the
trial.”